IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01191-LTB-MJW

ELLIS WILLIAMS,

Plaintiff,

v.

UNITED/CONTINENTAL,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT UNITED AIRLINES, INC.'S PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION
FOR A MORE DEFINITIVE STATEMENT
(Docket No. 35)**

---

**Michael J. Watanabe
United States Magistrate Judge**

This matter is before the Court on Defendant United Airlines, Inc.'s ("United")

Partial Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative,

Motion for a More Definitive Statement. (Docket No. 35.) Judge Lewis T. Babcock

referred the subject motion to the undersigned Magistrate Judge. (Docket No. 36.) The

Court has reviewed the subject motion (Docket No. 17), Plaintiff Ellis Williams'

("Plaintiff") Response (Docket No. 37), and Defendant's Reply. (Docket No. 38.) The

Court has taken judicial notice of the Court's file, and considered the applicable Federal

Rules of Civil Procedure and case law. The Court now being fully informed makes the

following findings of fact, conclusions of law, and recommendation.

## I. BACKGROUND

The following allegations are taken from Plaintiff' First Amended Complaint

(Docket No. 34) and are presumed to be true for the purposes of this motion.

Plaintiff, who is a black man from Antigua and Barbuda with a noticeable Caribbean accent, is a former United employee. (Docket No. 34 ¶¶ 1 & 6.) For more than a decade, Plaintiff was a pilot for United Express–the brand name for the branch of United Airlines that operates short and medium regional flights–first as an officer, then as a captain. (*Id.* ¶ 8.) On January 5, 2016, Plaintiff was hired by United as a first officer. (*Id.* ¶ 9.) While pilots are covered by a collective bargaining agreement ("CBA") between United and the airline pilot union, Air Line Pilots Association, International, they must first serve a probationary period during which they cannot file a grievance concerning discipline or discharge. (*Id.* ¶ 10.)

Plaintiff had his orientation in Denver, Colorado, where he scored well on a written test and underwent a flight simulator evaluation. (*Id.* ¶¶ 11-12.) During the orientation, Plaintiff was promised that United is an equal opportunity employer that did not discriminate, and diversity was represented as a core value of the company. (*Id.* ¶ 11.) Plaintiff was teamed up with Cliff Davis–a white, non-Caribbean man–for the simulations. (*Id.* ¶ 12.)

Plaintiff alleges that he was subject to the following acts of harassment and discrimination during the training process:

- On January 28, 2016, Pilot Instructor ("PI") Jebb Baum permitted Davis to leave the simulation early due to a previous engagement, while Plaintiff had to complete the four-hour session. (*Id.* ¶ 13.)

- When they returned on January 28, 2016, PI Charles Taylor offered

Williams a watermelon flavor Slurpee drink and offered a cherry flavor to Davis, which Plaintiff alleges was an intentional racial slur. (*Id.*)

- During another training session on February 2, 2018, Taylor instructed Plaintiff to "just sit on your hands and watch," and then criticized him for not doing anything, refusing to acknowledge that he had told Plaintiff to only sit and watch. (*Id.* ¶ 14.)

- On February 3, 2018, PI Brad Halloran told Plaintiff and Davis, "I think both of you are doing a great job," and "[i]f I was giving you your evaluation you both would have no problem passing." He then addressed Plaintiff, "Ellis, I don't find there's a problem with you, I think you're just like a gentle giant," which Plaintiff alleges is "reflective of race discrimination and racial profiling by which large black men [like Plaintiff] are considered dangerous." (*Id.* ¶ 15.)

- On February 4, 2016, Plaintiff alleges that Taylor disparaged his abilities, and told him, "So far, I know of four people who had failed and got fired, three of which were Spanish with heavy accents." Considering his Caribbean accent, Plaintiff alleges that Taylor's remarks, which were directed only at him, reflect national origin discrimination. Taylor's behavior caused Plaintiff to feel humiliated and nervous, so much so he had to take a break during the training. (*Id.* ¶¶ 16-19.)

- Plaintiff passed this evaluation, but PI Taylor told him that he needed to take Plaintiff to his boss over his worry that Plaintiff would not be able to handle an actual emergency because he does not talk. Meanwhile, Davis,

who also passed, got to leave. (*Id.* ¶ 20.)

- Plaintiff was never properly debriefed about what he did right or wrong during the training exercise; instead, PI Taylor took him to Rob Strickland, the Human Factor Manager. (Taylor's boss was out of the office.) While they were waiting, Taylor told Plaintiff that if it was not for Davis, he would not have passed the evaluation, and then repeated to Strickland his concerns about Plaintiff's ability to handle himself in an emergency. Plaintiff informed Strickland and Taylor that he had flown during actual emergencies. Taylor then criticized a typographical error Plaintiff made, and falsely implied that Plaintiff is probably dyslexic. On leaving the meeting, Taylor stated that he was going to give Plaintiff's next instructor/evaluator "the dirty down low" about Plaintiff. (*Id.* ¶¶ 21-22.)

- Plaintiff spoke to Halloran after he left Strickland's office, but he did not tell him what happened with Taylor out of fear of retaliation. (*Id.* ¶ 23.)

- During his next few training sessions with instructors Kevin Mauch and Steve Renfro, Plaintiff passed his evaluations without incident. (*Id.* ¶ 24.)

- During the final phase of training, Plaintiff was given extra training that Davis was not required to complete, even though it was Davis, not Plaintiff, that needed it. (*Id.* ¶¶ 25-29.)

- On March 8, 2016, Plaintiff failed his "check ride" with Standards Captain Dave Wood due to "frivolous" and pretextual concerns that demonstrate that Wood made up his mind to fail him before the evaluation even

started. (*Id.* ¶¶ 30-31.)

- Strickland told Plaintiff, who was ill, to go home and get some rest, so Plaintiff flew home to Washington D.C. When he arrived, he discovered that he was actually scheduled for training the next day, so he had to fly back, even though he was sick. Plaintiff alleges that Davis was given time off, and that he should have as well. (*Id.* ¶ 32.)

- On March 15, 2018, during his second "check ride," Plaintiff was subjected to discrimination by Standards Captain Mark Rosenhahn and "seat-fill" instructor Steve Renfro, when they failed for follow the normal and proper conduct of a "check ride" and did not abide by standard procedures. Rosenhahn then made false comments to Flight Evaluator Bryan Wright, and Plaintiff ended up failing the evaluation. (*Id.* ¶¶ 33-46.)

- On March 21, 2018, Plaintiff was given the option to resign or be fired. He chose termination. (*Id.* ¶ 47.)

- Plaintiff is personally aware of at least one other black pilot who was well-qualified but yet was terminated by United during the initial training, while two white pilots passed the training and evaluation but had performed poorly compared to Plaintiff. (*Id.* ¶ 47.)

Plaintiff alleges that United has a long history of race and national origin discrimination. (*Id.* 50.) On April 30, 1976, a Consent Decree was entered in *USA v. United Airlines, Inc*., Civil Action No. 73-C-972, United States District Court for the Northern District of Illinois, Eastern Division ("Consent Decree"), under which United

was "required to engage in a wide range of remedial actions and changes in hiring practices for minorities, including seniority adjustments, minority recruitment, selection, discipline, reinstatements, and hiring goals for entry level pilot positions. (*Id.* ¶ 52.) Due to a lack of progress in hiring black pilots, the Equal Employment Opportunity Commission ("EEOC") sought to enforce provisions of Consent Decree, and in 1993 and 1994, a series of settlement agreements under the Consent Decree were made covering pilot hiring, requiring, inter alia, changing of practices with respect to minority pilot hiring. (*Id.* ¶ 53.) However, in the years since the Consent Decree ended, the pattern of discrimination concerning pilots at United has continued.

Plaintiff asserts seven causes of action in his Amended Complaint. Only the fourth, fifth, sixth, and seventh causes of action are at issue here. In the subject motion, United requests that Plaintiff's hostile work environment, breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional misrepresentation, fraud claims be dismissed with prejudice.

## II. LEGAL STANDARDS

### a. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case; rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may

only exercise jurisdiction when specifically authorized to do so). Rule 12(b)(1) motions generally take one of two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

### b. Fed. R. Civ. P. 12(b)(6)

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The Court's function on a Rule 12(b)(6) motion . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim." *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment II, LLC*, 2014 WL 4400764, at *2 (D. Colo. Sept. 5, 2014). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cutter v. RailAmerica, Inc.*, 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[A] plaintiff must 'nudge [ ] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F. 3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" *Id*. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id*.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo*.,

154 F.3d 1124, 1126–27 (10th Cir. 1998); *Seamons v. Snow*, 84 F. 3d 1226, 1231–32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions[.]'" *Khalik*, 671 F.3d at 1190 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191.

### III. ANALYSIS

#### a. Fourth Cause of Action - Hostile Work Environment

Plaintiff alleges that United's conduct, as described above, created a hostile and abusive working environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Colorado Anti-Discrimination Act ("CADA"). Defendant argues that this claim should be dismissed under Rule 12(b)(1) because Plaintiff failed to exhaust administrative remedies, and under Rule 12(b)(6) because Plaintiff did not adequately plead the claim.

Title VII prohibits discrimination against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys, Inc*., 510 U.S. 17, 21 (1993) (citing 42 U.S.C. § 2000e–2(a)(1)); *James v. James*, 129 F. Supp. 3d 1212, 1221 (D. Colo. 2015). The EEOC is vested with the authority to enforce § 2000e–16(a). *See* 42 U.S.C. § 2000e–16(b). Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies with either the EEOC or the appropriate state

employment practices agency. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). In addition to those specific claims presented to the EEOC, the Court may exercise jurisdiction over claims falling within "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc*., 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks and citation omitted). An EEOC charge must "contain the facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id.*; *see also McGarr v. Peters*, 2009 WL 3855938, at *5–6 (W.D. Okla. Nov. 17, 2009) (holding that plaintiff failed to exhaust his age-based failure to promote claim where plaintiff's EEO complaint only identified an age-based hostile work environment claim). Courts must liberally construe EEOC charges in determining whether remedies have been exhausted as to a particular claim. *Id.* "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust." *McBride v. CITGO Petroleum Corp*., 281 F.3d 1099, 1106 (10th Cir. 2002).

According to an unsigned copy of the EEOC Charge submitted to the EEOC and the Colorado Civil Rights Division Plaintiff alleged that United discriminated against him because of his race, color, sex, and national origin. (Docket No. 31-2.)[1] Plaintiff also

---

[1] As neither party apparently disputes the authenticity of this document, which was submitted as an exhibit to United's Response Plaintiff's Motion for Leave to File

filled out a EEOC Intake Questionnaire, which identified "racism, white supremacy, and gross employee misconduct" as additional bases for his discrimination charge. (Docket No. 37-2 at 3.) The Intake Questionnaire also includes Plaintiff's narrative of the events that led to his termination, which essentially tracks the allegations made in the Amended Complaint.

United cites Judge Blackburn's analysis in *Wolfe v. US Bank National Association* in support of its contention that Plaintiff's EEOC charge was deficient to exhaust his hostile work environment claim. After summarizing the administrative exhaustion doctrine, Judge Blackburn stated:

> Although the pleading standards are thus quite liberal, nothing in plaintiff's Charge of Discrimination reasonably can be read to assert a claim of hostile work environment discrimination. The form plaintiff completed includes a listing of check boxes to indicate that the charge is for "discrimination based on" various forms of prohibited conduct. Plaintiff checked the boxes marked "retaliation," "disability," and "age." Moreover, although hostile work environment harassment is a form of discrimination, *see National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 125, 122 S.Ct. 2061, 2078, 153 L.Ed.2d 106 (2002) (O'Connor, J., concurring in part and dissenting in part), and although the form includes no separate box marked "hostile work environment," it does provide a box for alleging "other" types of discrimination, which plaintiff did not check. Nor did plaintiff check the box indicating that she sought redress for a "continuing action." "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." *Jones v. U.P.S. Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal citations omitted).

2012 WL 1604659, at *3 (D. Colo. May 8, 2012) (internal citation to record

---

Amended Complaint (Docket No. 31), the Court will consider it.

omitted).

Here, in his EEOC Charge, Plaintiff did not mark the "other" box and identify hostile work environment as a type of discrimination he suffered. Accordingly, a presumption arises that Plaintiff was not asserting such a claim. However, unlike the plaintiff in *Wolfe*, Plaintiff's narrative of events does clearly set forth the basis of a hostile work environment claim, which serves to rebut this presumption. As discussed more detail below, "[t]o assert a hostile work environment claim, a plaintiff must allege facts indicating a 'workplace permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Mitchell v. City and County of Denver*, 112 F. App'x 662, 668 (10th Cir. Oct. 12, 2004)). Plaintiff's narrative refers to multiple, specific incidents of racism and workplace discrimination, incidents that occurred over weeks of protracted training exercises and involved numerous United employees. The Court finds the hostile work environment claim falls within the scope of the administrative investigation that can reasonably be expected to follow the EEOC Charge, and that Plaintiff simply neglected to attach a legal label to his underlying factual allegations. *Cf. Mitchell*, 112 F. App'x at 667–68. Consequently, the Court recommends that Plaintiff's hostile work environment claim not be dismissed for lack of federal subject matter jurisdiction.

Likewise, accepting all well-pled factual allegations in the Amended Complaint as true and resolving all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has stated a claim of hostile work environment. In order to state such a claim, a plaintiff must allege facts showing that the work environment "is both subjectively and

12

objectively hostile or abusive." *Lounds v. Lincare, Inc*., 812 F.3d 1208, 1222 (10th Cir. 2015) (internal quotation marks and brackets omitted). To meet the objective portion of this test, the alleged harassment must "be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Id.* "A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents . . .." *Herrera v. Lufkin Indus., Inc*., 474 F.3d 675, 680 (10th Cir. 2007). Instead, "[a] hostile work environment claim must be based on severe and pervasive discriminatory intimidation or insult." *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003). "[P]ervasiveness and severity are independent and equal grounds" upon which a plaintiff may establish an objectively hostile or abusive work environment, though these two grounds "are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute." *Tademy v. Union Pac. Corp*., 614 F.3d 1132, 1144 (10th Cir. 2008) (quotation marks and ellipses omitted). The Court considers the totality of the circumstances in determining whether a work environment is hostile or abusive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *accord Lounds*, 812 F.3d at 1222. "One of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the

claim." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412–13 (10th Cir. 1987) (citations omitted).

Plaintiff's Amended Complaint refers to several examples of conduct that created a hostile work environment, including: (1) the incident involving the watermelon flavored drink; (2) singling Plaintiff out for harsh and disparaging criticism, while holding his white co-trainee to different standards; (3) the disparaging statements made by Taylor on multiple occasions, including his reference to the fact that three of the four people who had failed training and were fired had heavy Spanish accents; and (4) United managers making and relaying false statements and criticism of Plaintiff's performance. These events were pervasive in that they occurred in succession over a short period of time and involved multiple United employees. Plaintiff also alleges that the hostile work environment unreasonably interfered with an his training and evaluation as a pilot. While the Court cannot say with certainty that these allegations, without more, will survive a motion for summary judgment under Rule 56, for the purposes of a motion to dismiss, Plaintiff adequately alleges that conditions were sufficiently severe and pervasive to alter the conditions of his employment and create an abusive working environment.

### b. Fifth Cause of Action - Breach of Contract

Plaintiff's fifth cause of action is for breach of contract, in which Plaintiff alleges that United breached the "CBA, the offer letter[,] and Defendant's promises" because he was never actually placed in a position as a pilot and was terminated almost immediately. United argues that his allegations are insufficient to establish a breach of contract claim.

14

Under Colorado law, a breach of contract claim has four elements: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1204 (D. Colo. 2015) (citing *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

As to the offer letter, the Amended Complaint states that United promised him a job through a written offer letter that "set forth a promise of employment and set out the terms." (Docket No. 34 ¶ 100.) He alleges that he relied on the promise by resigning his former employment and coming to Colorado to participate in United's orientation and evaluation process. (*Id*.) However, Plaintiff does not describe what United's obligations were under the contract, nor how his termination constituted a breach of the contract. Therefore, Plaintiff has failed to raise the right to relief above a conclusory or speculative level. *See, e.g., Tatonka Capital Corp. v. Connelly*, No. 16-CV-01141-MSK-NYW, 2016 WL 9344257, at *6 (D. Colo. Dec. 29, 2016). Although he attaches the offer letter to his response (*see* Docket No. 37-3), a Rule 12(b)(6) motion to dismiss tests the sufficiency of the Amended Complaint alone. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (explaining that the Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the [answer] after taking those allegations as true."). On the four-corners of Plaintiff's Amended Complaint, he has failed to state a breach of contract claim on the offer letter.

A similar problem mars Plaintiff's claim that United breached an immplied

contract contained in its policies and procedures. The Amended Complaint states that United had "policies and procedures which constituted a contract" with Plaintiff, and that "United's policies . . . promised that the decisions of the company, which includes the evaluation process, would be fair and would be free of race discrimination." (Docket No. 34 ¶ 100.) Although the question of whether an employer's promises and assurances rise to the level of an implied contract is a typically a question of fact reserved for the jury, the issue may be decided "'as a matter of law' and a breach of contract claim subsequently dismissed if the alleged statements by an employer are deemed unenforceable because they constitute 'nothing more than vague assurances[.]'" *Fuller v. Old Dominion Freight Line, Inc*., No. 17-CV-00080-RBJ, 2017 WL 2537107, at *3 (D. Colo. June 12, 2017) (quoting *Dupree v. United Parcel Serv., Inc*., 956 F.2d 219, 222 (10th Cir. 1992)). Because Plaintiff does not identify any specific policies that United breached, the Court must conclude that United's promise that its training and evaluation process would be free of discrimination is merely a "vague assurance," and cannot form the basis of contractual liability.

Finally, United argues that Plaintiff's contract claim based on the CBA is preempted by the Railway Labor Act ("RLA"). Under the RLA, employee disputes are categorized as "minor" or "major." A "minor" dispute is defined as "'involving the interpretation or application of an existing labor agreement.'" *Fell v. Cont'l Airlines, Inc*., 990 F. Supp. 1265, 1268 (D. Colo. 1998) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)). A "major" dispute "'is one where a party is trying to establish rights not even arguably contained in an agreement.'" *Id* (quoting *Zimmerman v. Atchison, Topeka*

& *Santa Fe Ry. Co.*, 888 F.2d 660 (10th Cir. 1989)). "'The distinguishing feature of [a 'minor' dispute] is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement.'" *Id.* (quoting *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 305 (1989)). The threshold question is whether resolution of plaintiff's state law claims requires the interpretation or application of the CBA. *Id.* (citing *Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 836 (10th Cir. 1996)).

Plaintiff concedes that this case concerns a "minor" dispute involving individual claims by an individual employee, and that his claims "may be resolved under the arbitration provisions of the CBA which refers disputes to a system board of adjustment chosen by the company and the Union." (Docket No. 37 at 21.) This would seem to end the analysis, as "minor" claims are preempted by the RLA. *See Fell*, 990 F. Supp. at 1268. However, Plaintiff confusingly argues that "[b]ecause he never actually went 'on the line' as a pilot, he is excluded from [the arbitration] mechanism under the CBA," and, therefore, he must pursue the claim in federal court. (*Id.*) As United points out, this contention makes no sense. Plaintiff cannot assert a claim for relief under the CBA while simultaneously arguing that he is not entitled to rights under the CBA. As pled, Plaintiff's CBA-related contract claim is preempted by the RLA and must be dismissed with prejudice.

In sum, the Court recommends that Plaintiff's breach of contract claim arising under the CBA should be dismissed with prejudice, while Plaintiff's breach of contract claims based on United's policies and procedures and the offer letter should be dismissed without prejudice.

### c. Sixth Cause of Action - Breach of Covenant of Good Faith and Fair Dealing

The Amended Complaint alleges that "[t]here is, implied in the employment contracts between Williams and Defendants described herein, a covenant of good faith and fair dealing" which was breached when United deprived Plaintiff "of the benefit of the contract including his employment as a pilot." (Docket No. 34 ¶¶ 106-07.) However, "several Colorado appellate courts and federal courts applying Colorado law have held that there is no cause of action under Colorado law for breach of the implied covenant of good faith and fair dealing in the employment context." *Gloston v. ITT Fed. Servs. Int'l Corp.*, 2007 WL 1830486, at *2 (D. Colo. June 21, 2007); *see, e.g., Pittman v.. Larson Distrib. Co.*, 724 P.2d 1379, 1385–86 (Colo. App. 1986); *Shepherd v. United States Olympic Comm.*, 94 F. Supp. 2d 1136, 1148–49 (D. Colo. 2000). To the extent Plaintiff's claim is for breach of an express covenant of good faith and fair dealing, such a claim is subsumed in a properly-pled breach of contract claim. *Id.* Because the Court finds that Plaintiff has failed to properly plead a claim for breach of contract, implied or express, Plaintiff's breach of good faith and fair dealing claim should be dismissed.

### d. Seventh Cause of Action - Intentional Misrepresentation, Fraud

Plaintiff alleges that United represented to Plaintiff that he would be hired as a pilot and that United would take steps to ensure that Plaintiff was not subject to discrimination. (Docket No. 34 ¶ 111.) Plaintiff claims that these representations were false because United "never intended to employ Plaintiff [as] a pilot." and because its "managers were engaged in an [on-]going pattern and practice of discrimination." (*Id.*) United argues that this claim fails to meet Rule 9's pleading standards and should be

dismissed with prejudice.

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. However, a heightened pleading standard applies where a party alleges fraud or mistake. Rule 9(b) demands that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." (Emphasis added.) In the "paradigmatic" case of *Trussell v. United Underwriters, Limited*, the Court explained that Rule 9(b) "requires identification of the circumstances constituting fraud or mistake." 228 F. Supp. 767, 774–75 (D. Colo. 1964); *see Noland v. Gurley*, 566 F. Supp. 210, 215–16 (D. Colo. 1983). "More specifically," the Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)), *cert. denied*, 531 U.S. 926 (2000). Rule 9(b) does not, however, "require the pleading of detailed evidentiary matter, nor does it require any particularity connection with an averment of intent, knowledge, or condition of mind." *Trussell*, 228 F. Supp. at 774.

Why Rule 9(b) is limited in reach to claims grounded in fraud is illuminated by the primary motives that animate the rule. *See S2 Automation LLC v. Micron Tech., Inc.*, 281 F.R.D. 487, 494 (D.N.M. 2012). "First, the requirement of pleading with particularity protects defendants' reputations from the harm attendant to accusations of fraud or

dishonest conduct." *Id.* (citing *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 921 (4th Cir. 2003)). Second, it "puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense." *Id.* Third, the rule "prevent[s] plaintiffs from tagging on specious fraud claims to their pleadings in an attempt 'to induce advantageous settlements or for other ulterior purposes.'" *Id.* (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992))

To state a claim for fraud under Colorado law, the Plaintiff must show: (I) that United made a statement that was false or misleading; (ii) that United knew the statement to be untrue or made it with recklessly without regard to its truth; (iii) that it did so with the intent that Plaintiff rely upon the statement; and (iv) that the Plaintiff did indeed rely upon it to his detriment. *See Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1181 (D. Colo. 2009). Where the allegedly false statement was a promise by United to do some act in the future, Plaintiff must show that, at the time the statement was made, United had a present intention not to perform as it was promising. *Id.* (citing *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo. App. 2005)).

The first allegedly actionable statement is United representing to Plaintiff that he was being hired as a pilot. However, this statement was clearly not false: Plaintiff *was* hired as a pilot; he just was not retained as one. Plaintiff does not allege that he was promised to be employed for specific duration or term. Accordingly, this statement cannot give rise to liability.

The second alleged misrepresentation is that Plaintiff would not be subjected to

race discrimination. This allegation is insufficient under Rule 9(b) because it does not identify the who made the statement or specify when it was made. This lack of specificity is especially problematic because the time line of events presented in Plaintiff's Amended Complaint does not add up. Plaintiff claims that working for a major carrier such as United was a career goal, and that he flew for a United subsidiary (United Express) for over ten years. (Docket No. 34 ¶¶ 7-8.) Plaintiff then claims he was offered a job with United, and that he was hired on January 5, 2016. (*Id.* 9.) It was only "over the next few months", after Plaintiff had accepted the job and during his orientation, that he alleges that "he was promised that United is an equal opportunity employer and does not discriminate." (*Id.* ¶ 11.) By this time, however, Plaintiff was already employed by United as a pilot. It follows, then, that Plaintiff has failed to allege that United made these statements with the intent that Plaintiff rely on them, and that the Plaintiff did indeed rely on them.[2]

For these reasons, the Court recommends that Plaintiff's Seventh Cause of Action be dismissed without prejudice.

## IV. RECOMMENDATION

It is hereby **RECOMMENDED** that Defendant United Airlines, Inc.'s Partial Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, Motion for a

---

[2] In his Response, Plaintiff argues that the Seventh Cause of Action states claims for fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement. (Docket No. at 24-29.) The fact that this is not clear at all from a review of the Amended Complaint is further evidence that the claim was not pled with sufficient particularity. The Court agrees with United that it should not have to guess at what claim Plaintiff is attempting to make. In any event, the Court's analysis applies equally under each theory: Plaintiff has not met the pleading standard set forth in Rule 9(b).

More Definitive Statement. (Docket No. 35.) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- **DENIED** as to as to Plaintiff's Fourth Cause of Action - Hostile Work Environment;

- **GRANTED** as to Plaintiffs' Fifth Cause of Action - Breach of Contract, such that the claims based on the offer letter and breach of an implied contract be **DISMISSED WITH PREJUDICE**, and that the claim based on the CBA be **DISMISSED WITH PREJUDICE**;

- **GRANTED** as to Plaintiff's Sixth Cause of Action - Breach of the Covenant of Good Faith and Fair Dealing, such that the claim be **DISMISSED WITHOUT PREJUDICE**, and

- **GRANTED** as to Plaintiff's Seventh Cause of Action - Intentional Misrepresentation, Fraud, such that the claim be **DISMISSED WITHOUT PREJUDICE**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions,**

*Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*,

**91 F.3d 1411, 1412-13 (10th Cir. 1996).**

| | | |
|---|---|---|
| Dated: | June 26, 2018 | */s/ Michael J. Watanabe* |
| | Denver, Colorado | Michael J. Watanabe |
| | | United States Magistrate Judge |